UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| JOHN ABDO, JR., individually and on behalf of those similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>KELLIE WASKO, Sec of Corretions; TERESA BITTINGER, Warden; and UNKNOWN AMOUNT OF ACTORS, committing atrocities across the U.S.,<br><br>Defendants. | 4:23-CV-04213-LLP<br><br><br>MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S VARIOUS MOTIONS AND 1915A SCREENING |

Plaintiff, John Abdo, Jr., an inmate at the South Dakota State Penitentiary (SDSP), filed a pro se lawsuit pursuant to 42 U.S.C. § 1983 and *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). Doc. 1. This Court granted Abdo's motion for leave to proceed in forma pauperis, and Abdo paid his initial partial filing fee. Doc. 10. Abdo filed two amended complaints, Docs. 5 and 21, and various motions, Docs. 11, 12, 16, and 20.

**AMENDED COMPLAINTS**

On January 4, 2024, Abdo filed an amended complaint. Doc. 5. "A party may amend its pleading once as a matter of course no later than . . . 21 days after serving it[.]" Fed. R. Civ. P. 15(a)(1)(A). Because the defendants have not been served, Abdo was within the time to amend as a matter of right.

On August 1, 2024, Abdo filed a second amended complaint. Doc. 21. Because Abdo already amended his complaint, he may only amend his pleading with written consent or the Court's leave. Fed. R. Civ. P. 15(a)(2). Because Abdo did not obtain the defendants' consent or the Court's leave, he may not file a second amended complaint. Even if Abdo had obtained

1

written consent or the Court's leave, his second amended complaint does not comply with the Court's local rules. *See* D.S.D. Civ. LR 15.1. Thus, this Court screens Abdo's first amended complaint, Doc. 5.

## 1915A SCREENING OF FIRST AMENDED COMPLAINT

### I.     Factual Background

Abdo was released from prison on interstate compact to Oklahoma City, Oklahoma. Doc. 5 at 1; Doc. 5-1 at 1. Abdo was placed on telephone reporting supervision with the Oklahoma Department of Corrections. Doc. 5-1 at 1. While on parole, Abdo had custody of several minor children: Z.B., I.M., E.M., I.B., and W.B. *Id.* at 34, 36; Doc. 5 at 4. Abdo claims that he retained custody of the children despite two other children passing away at his home. Doc. 5-1 at 34, 40–42.

The children's mother and Abdo's soon-to-be ex-wife, Ashley, would visit the children every once in a while. *Id.* at 36. Abdo claims that Ashley was suffering from gambling and drug addictions and was "stirring the pot with housing and took [him] off the lease trying to defame [his] name and character." *Id.* at 36–37. *See also id.* at 41. Abo alleges that Ashley used his social media to tarnish his reputation. *Id.* at 41. Abdo rented a trailer home for $300 for about one month, but he was unaware that a family member of Ashley's new boyfriend owned the trailer home. *Id.* at 37. Abdo alleges that the trailer was above a snake pit and that the owner of the snake-pit was involved with human trafficking, was an accidental assassin, and would use snake bites to kill his victims. *Id.* at 39. Abdo claims that he was bitten by a snake but survived because the poison got stuck in between his calluses. *Id.* at 39, 43.

Abdo's parole was ultimately terminated because of inappropriate communication or behavior with a minor. *Id.* at 1–2; Doc. 5 at 1. Abdo and Ashley had custody of the minor, who

was Ashley's niece. Doc. 5 at 1. Abdo claims that the alleged inappropriate communication was a set up by Ashley "to damage, destroy or defame [his] reputation due to the group of people that lured her in[.]" *Id.* at 2. Abdo believes that the allegations stem from Ashley's conduct "to save face from her own absence and to gain a new house from housing[.]" *Id.* at 5.

Abdo alleges that he "was four months into [his] suspended sentence while being attacked with such a technological and tacticle [sic] advantage that it could only be government actors." *Id.* at 2. Abdo claims that his seemingly altered state of mind during communications with parole officers evidenced the use of a technological attack. *Id.*; *see also* Doc. 5-1 at 2. He allegedly suffered progressive attacks on his psychological wellbeing because he was cooked with radio frequency radiation. Doc. 5 at 5; Doc. 5-1 at 14. He alleges that remote access devices or radiological dispersal devices have been used to influence emotions. Doc. 5-1 at 16, 57. He claims that there are liquid plastics and liquid metals in public waters to control human behavior and potentially cause health injuries, including his high blood pressure and Crohn's disease. Doc. 5 at 7–8. He also alleges that silicone layers have been added inside human bodies. *Id.* at 9–10, 13. He claims that these radio frequencies, water contaminations, and silicone layers control physical health and emotions, including feelings of sexual attraction. *Id.* at 11–13.

Abdo alleges that the South Dakota Board of Pardons and Paroles (the Board) abused its power by "disregarding sentencing judges orders by way of denying [him his] successful departure completing the unsuspended portion of [his] sentence and trying to violate [his] suspended sentence based on [his] terms of parole instead of suspension." *Id.* at 2. Abdo believes that the Board abused its discretion because he successfully completed his prison term, lived a law-abiding lifestyle, had custody of several children, had employment, completed classes, and was on unsupervised phone call parole. *Id.* at 4. Abdo also claims that the Board's decision was

3

wrongful because he was not able to gather evidence about the accusations of inappropriate communications with a minor. *Id.* at 5.

Abdo questions if the Board overstepped its authority, disregarded a judgment of conviction, and denied his suspended sentence was a way of to "keep[] track of inventory, maintain[] a controlling power in the destiney [sic] and direction of the gang stalking games with an attempt on [his] life[.] Did they confine [him] to bide time to generate crazy?" *Id.* at 3. Abdo believes that Shane Vogt,[1] his counsel for his state proceedings, has been compromised due to ineffective assistance already in his parole violation hearings. *Id.* at 1; Doc. 5-1 at 51.

Abdo claims that he has been forced into peonage while incarcerated. Doc. 5-1 at 59–60. He was required to pay $0.50 a copy for his prisoner trust account report. *Id.* at 61. He has not been assigned employment, despite his requests. *Id.* He filed a grievance requesting a job and complaining about insufficient wages and the cost of prisoner trust account reports. *Id.* at 65. Abdo alleges that prisoner's wages are limited to $0.50 per hour, which keeps him in poverty and does not provide sufficient funds to support his dependents. *Id.* at 61. Although Abdo was not employed at the time he filed his amended complaint, he was previously employed as a cook, a GED tutor, a braille tactile graphic artist, and a barber. *Id.* at 51. Despite Abdo making $0.25 per hour, which was later raised to $0.50 per, his tax returns show that he made minimum wage. *Id.* at 51, 55.

Abdo sues all defendants in their official capacities.[2] Liberally construing Abdo's complaint, he alleges claims for due process, equal protection, separation of powers, as well as

---

[1] Abdo spells the individual's last name as Voigt. Doc. 5 at 1. This Court will refer to the individual by the correct spelling of his last name: Vogt. Doc. 5-1 at 33.
[2] Abdo does not specify if he sues the defendants in their individual or official capacities. *See* Doc. 5. When a plaintiff does not specify whether he is suing defendants in their individual or official capacity, the court considers the suit to be against the defendants solely in their official

4

cruel and unusual punishment. Doc. 5 at 6–7; Doc. 5-1 at 61–62. He alleges that many cases prove the claims alleged in his complaint. *See generally* Docs. 5, 5-1. His complaint also cites to several statutes: 5 U.S.C. § 552, 18 U.S.C. § 371, 18 U.S.C. § 1029, 18 U.S.C. § 1581, 18 U.S.C. § 1583, 18 U.S.C. §§ 1831 through 1839, 18 U.S.C. § 2256, 18 U.S.C. § 2261, 18 U.S.C. § 2261A, 18 U.S.C. § 2266, 28 U.S.C. § 1338, 42 U.S.C. § 1994, 42 U.S.C. § 2000e, 47 U.S.C. § 227, and 50 U.S.C. § 3029. Doc. 5 at 6; Doc. 5-1 at 11, 15–16, 45–57. Abdo claims that his rights of equality were disregarded and that he was "physically hurt, molested and dehumanized." Doc. 5 at 6. "For creating health concerns, dehuminizing [sic] [him] and pushing a form of cruel and unusual punishment that created such a fear of inequality [Abdo is] asking for 10,000,000 US dollars." *Id.* at 14.

## II. Legal Background

The court must assume as true all facts well pleaded in the complaint. *Est. of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). If it does

---

capacity. *Kelly v. City of Omaha*, 813 F.3d 1070, 1075 (8th Cir. 2016). Thus, Abdo sues the defendants in only their official capacities.

not contain these bare essentials, dismissal is appropriate. *See Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985). *Twombly* requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true[.]" 550 U.S. at 555 (internal citation omitted); *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a "complaint must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory"). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). The court will now assess each individual claim under 28 U.S.C. § 1915A.

## III.  Discussion

### A.  Claims on Behalf of Those Similarly Situated

Abdo seeks to bring claims on behalf of those similarly situated to him. Doc. 5 at 1. "Pro se litigants may not represent the interests of other parties." *Litschewski v. Dooley*, 4:11-CV-04105-RAL, 2012 WL 3023249, at *1 n.1 (D.S.D. July 24, 2012) (citing *Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000)), aff'd 502 F. App'x 630, 630 (8th Cir. 2013) (per curiam). *See also* 28 U.S.C. § 1654 (permitting a pro se plaintiff to plead their own case in federal court). Thus, Abdo's claims on behalf of similarly situated inmates are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### B.  Official Capacity Claims Against Bittinger and Wasko

Abdo sues Bittinger and Wasko in their official capacities for money damages. Doc. 5 at 14. "[A] suit against a state official in his or her official capacity is not a suit against the official

but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). Thus, it is a suit against the state itself. While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id.* at 66.

The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. *Id.* Here, Abdo seeks monetary damages against Bittinger and Wasko, who are employees of the State of South Dakota. Doc. 5 at 14. Claims against defendants employed by the State of South Dakota in their official capacities are the equivalent of claims for money damages against the State of South Dakota. The State of South Dakota has not waived its sovereign immunity to allow Abdo's official capacity claims for money damages. Thus, Abdo's claims against Wasko and Bittinger in their official capacities for money damages are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

"Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) (citing *Hafer v. Melo*, 502 U.S. 21, 30 (1991)). Because Abdo's amended complaint does not request any injunctive relief against Wasko or Bittinger in their official capacities,[3] Abdo's claims against Wasko and Bittinger in their official capacities for

---

[3] In Abdo's Motion to Proceed Without Initial Payment Due to Unfair Competition 44 C.F.R. § 150.2, he requests that this Court "ask [the Department of Corrections] to remove said barrier of blocking [his] financial stability, economic value, actual or potential and the blockade of screening that infringes on [his] support systems privilege in providing charity, gifts." Doc. 16 at 4. Abdo also filed a request for injunctive relief asking the Court "to prohibit the use of the radiological dispersal device in this torturous form of utilizing microwaves to generate voices, cook flesh and generate head aches [sic]." Doc. 19 at 1. *See also* Doc. 20 at 2. Although Abdo

7

injunctive relief fail to state a claim upon which relief may be granted. Even if Abdo had requested injunctive relief against Wasko and Bittinger, he failed to allege that Wasko and Bittinger committed any acts that violated his rights. Thus, Abdo's official capacity claims against Wasko and Bittinger are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### C.     Claims Against Many Unknown Actors

Abdo sues the defendants "[f]or creating health concerns, dehuminizing [sic] [him] and pushing a form of cruel and unusual punishment that created such a fear of inequality[.]" Doc. 5 at 14. He alleges claims under § 1983 and *Bivens*.

Section 1983 claims may be brought against state actors. 42 U.S.C. § 1983. Abdo does not allege that Many Unknown Actors are state actors. *See generally* Doc. 5. Thus, his § 1983 claim against Many Unknown Actors is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

*Bivens* claims may be alleged against federal officials in their individual capacities for constitutional violations. 403 U.S. at 396–97; *FDIC v. Meyer*, 510 U.S 471, 484–86 (1994). Because Abdo does not alleges that Many Unknown Actors are federal officials and only sues Many Unknown Actors in their official capacities, Abdo's *Bivens* claim against Many Unknown Actors is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

---

"ask[s] the courts to compile all briefs, attatchments [sic] and effects as a collective whole being that the process of this initial attempt to utilize [his] right to access the courts[,]" Doc. 16 at 1, he has not properly amended to add any claims for injunctive relief to his amended complaint in accordance with Federal Rule of Civil Procedure 15 and the District's local rule 15.1. Thus, Abdo's amended complaint does not contain any claims seeking injunctive relief.

Even if Abdo could state a claim against Many Unknown Actors, he has not alleged any conduct by Many Unknown Actors. Thus, Abdo's claims against Many Unknown Actors are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## MOTIONS TO WAIVE FILING FEE

Abdo filed two motions to waive his filing fee. *See* Docs. 12, 16. Under the Prison Litigation Reform Act (PLRA), a prisoner who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). "When an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceeding or over a period of time under an installment plan." *Henderson v. Norris*, 129 F.3d 481, 483 (8th Cir. 1997) (cleaned up) (quoting *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997)). Because Abdo is obligated to pay the filing fee, his motions to waive his filing fee, Docs. 12 and 16, are denied.

## MOTION TO COMPEL ACCESS TO THE COURT

Abdo filed a motion requesting the SDSP, Nicole Mayer, and William Allen to allow access to the court. Doc. 11. This Court construes Abdo's motion as a motion for a preliminary injunction preventing the SDSP, Nicole Mayer, and William Allen from denying him access to the court. *Id.* Abdo does not allege a First Amendment access to the court claim in his amended complaint. *See* Doc. 5. "[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam) (citing *Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1185 (10th Cir. 1975)). Because all claims in Abdo's amended complaint are dismissed, he does not allege a First Amendment access to

the court claim, and he requests injunctive relief against several nonparties, his motion for a preliminary injunction, Doc. 11, is denied as moot.

## MOTION TO APPOINT COUNSEL

Abdo moves for counsel to be appointed because he believes that his prior attorney in his state criminal case is compromised and rendered in effective assistance of counsel. Doc. 5 at 1–2, 5, 14. Because Abdo's complaint is dismissed, his motion to appoint counsel, Doc. 5, is denied as moot.

## MOTIONS TO SUBPOENA

Abdo requests to subpoena Vogt "to give the documents [Abdo] gave to him with a list that would provide a clear picture to this episode." Doc. 5 at 14. *See also* Doc. 5-1 at 37. Abdo also requests reports from Oklahoma City Department of Human Services about welfare checks on Z.B., I.M., E.M., I.B. and W.B. from 2021 through 2023. Doc. 5-1 at 36, 40, 50. Abdo additionally requests to serve questions on the Secret Service about personal use of personal remote access devices. *Id.* at 11–19. Because Abdo's complaint is dismissed, his motions to subpoena, Docs. 5 and 5-1, are denied as moot.

## MOTION FOR RETALIATION INJUNCTIVE RELIEF

Abdo files a report of "Retaliation Injunctive Relief" because the toilet in his cell was clogged for three days during lockdown. Doc. 20. Abdo claims that by refusing to provide relief to Abdo, officers retaliated against him and violated his rights under the Fifth and Eighth Amendments. Doc. 20 at 1–2. He requests injunctive relief ordering that he "be 'let alone' and for our justice system to be corrected and our Civil liberties to be restored. And maybe looking at creating a civil liberties law enforcement due to criminal aspects being overbearing . . . And

overshadowing civil liberties." *Id.* at 2–3. Because Abdo's complaint is dismissed, his motion for injunctive relief, Docs. 20, is denied as moot.

Accordingly, it is ORDERED

1. That Abdo's claims against Wasko and Bittinger in their official capacities for money damages are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

2. That Abdo's remaining claims are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

3. That Abdo's motions to waive his filing fee, Docs. 12 and 16, are denied.

4. That Abdo's motion for a preliminary injunction, Doc. 11, is denied as moot.

5. That Abdo's motion to appoint counsel, Doc. 5, is denied as moot.

6. That Abdo's motions to subpoena, Docs. 5 and 5-1, are denied as moot.

7. That Abdo's motion to forgive late responses, Doc. 12, is denied as moot.

8. That Abdo's motion for retaliation injunctive relief, Doc. 20, is denied as moot.

DATED August 22, 2024.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK

11